IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-03086-RBJ

ART CORPORATE SOLUTIONS, INC., a Colorado corporation, and
ACTIVE RELEASE TECHNIQUES, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

DARYL LANEY, D.C., an individual,
LANEY CHIROPRACTIC AND SPORTS THERAPY, P.A., a Texas professional association, and
NEUROMUSCULAR CORPORATE SOLUTIONS, LLC, a Texas limited liability company,

    Defendants.

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, Subject to Same, Motion to Transfer [ECF No. 16]. The plaintiffs filed their response to the motion on January 23, 2015 [ECF No. 28][1] and the defendants filed a timely reply on February 6, 2015 [ECF No. 33]. The Court set the motion for oral argument, which was held on February 18, 2015. The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.[2] For the following reasons, the motion to dismiss is denied.

---

[1] The plaintiffs attach to this brief 243 pages of exhibits. Many are duplicative – some attached three times – and others, such as most of the filings from the Texas case, are not material to the jurisdictional issue. The Court would appreciate more circumspection in the future.

[2] No allegation was made as to the citizenship, as opposed to the residence, of the LLCs. The Court does not address diversity of citizenship as an alternative basis for subject matter jurisdiction, but the other grounds for such jurisdiction are sufficient. *See Enserco Energy, LLC v. Baugues*, No. 14-CV-01548-RBJ, 2014 WL 3767060, at *2 (D. Colo. July 31, 2014) (citing *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382 (1904), for the position that residency and citizenship are not coterminous).

## BACKGROUND

The plaintiffs, ART Corporate Solutions, Inc. ("ARTCS") and Active Release Techniques, LLC ("ART LLC"), collectively the "ART Companies", bring this lawsuit against the defendants, Dr. Laney, Laney Chiropractic and Sports Therapy, PA ("Laney Chiropractic"), and Neuromuscular Corporate Solutions, LLC ("NCS").  The plaintiffs bring seven causes of action under state and federal law: trademark infringement, false or misleading advertising in violation of the Lanham Act, deceptive business practices, unfair competition, breach of contract, breach of good faith and fair dealing, and tortious interference with contract.  Both of the plaintiffs are companies with their principal places of business in Colorado.  Each of the defendants resides in Texas, and the two defendant companies have their principal places of business in Texas.  The plaintiffs bring this case in Colorado, their home state.  Meanwhile, the defendants argue that there is no jurisdiction over them in Colorado because they do not have sufficient minimum contacts with the state.  The Court disagrees.

Though the parties paint a complex picture of the relationship between the plaintiffs and the defendants, the Court sees the case far more simply.  Dr. Laney received training from a Colorado company, ART LLC, in order to become a certified provider of ART, a soft-tissue massage technique.  Dr. Laney pursued this training for an obvious reason: to earn a living offering these massages.  However, Dr. Laney was (allegedly) only permitted to provide ART services to clients sent his way from ARTCS, a company related to ART LLC.  In 2004, ARTCS placed Dr. Laney and Laney Chiropractic (collectively the "Laney Practice") into an arrangement with Sabre, Inc., a Texas company, for the provision of on-site ART services for Sabre's employees. Sabre paid ARTCS $75 per 15-minute massage, and ARTCS paid the Laney

Practice a percentage of that total.  This relationship between the three parties continues to this day.

In 2009 a similar arrangement was established with another Texas company, Atmos Energy.  However, in order to cut out the middleman, Dr. Laney (allegedly) induced Atmos Energy to terminate its contract with ARTCS and to enter into a contract with NCS, Dr. Laney's new company, for the same services.  In the alternative, NCS allegedly stole the Atmos Energy contract from ARTCS by inducing Atmos Energy and the Laney Practice to each terminate or breach their agreements with ARTCS.  Based on these allegations, the plaintiffs have made a prima facie showing of jurisdiction over all three defendants.

## ANALYSIS

### Legal Standard.

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).  Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process.  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Therefore, the Court need only determine whether exercise of jurisdiction over the defendants comports with due process.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).  In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not

"offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945). In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways. First, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Second, specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). This inquiry "ensure[s] that an out-of state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 475).

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court may, in its discretion, address a 12(b)(2) motion based solely on the documentary evidence on file or by holding an evidentiary hearing. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). While these options are not mutually exclusive, the plaintiff's burden of proof changes

depending on the method employed by the court. *See id*. Where the court rules on the motion based only on the documentary evidence before it, the plaintiff may meet its burden with a prima facie showing of personal jurisdiction. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). When an evidentiary hearing is held in order to resolve factual disputes relating to jurisdictional questions, the plaintiff must prove facts supporting jurisdiction by a preponderance of the evidence. *See Oaklawn*, 959 F.2d at 174. In this case, the parties elected not to present evidence to the Court but instead only to hold oral argument on the pending motion. As such, the plaintiffs need only make a prima facie showing of personal jurisdiction.

"Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1244–45 (D. Colo. 2010) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The Supreme Court has identified the following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77. The burden is on the defendant to make a showing of unreasonableness.

**General Jurisdiction.**

The defendants move for dismissal of this action on the grounds that the Court cannot exercise either general or specific personal jurisdiction over them. The plaintiffs respond by attempting to establish that there are minimum contacts under specific jurisdiction analysis. The plaintiffs explain in a footnote, however, that they are "not conceding that the Court lacks

general jurisdiction over the Defendants," asking to reserve their right to bring arguments in support of this alternate theory at a later time. [ECF No. 28 at 9 n.3]. The request is denied. Upon the filing of the motion the burden shifted to the plaintiffs to establish personal jurisdiction over the defendants in whatever manner possible. The plaintiffs are not entitled to two bites at the apple.

### Specific Jurisdiction.

Where an out-of-state actor purposefully avails itself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws, jurisdiction is proper. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Supreme Court has emphasized "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). As the Supreme Court has explained, "where individuals 'purposefully derive benefit' from their interstate activities it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.* at 473–74 (internal citation omitted).

The Laney Practice purposefully derived a benefit from its ongoing business relationship with the ART Companies. By becoming an ART-certified provider, Dr. Laney was able to provide care under an established treatment program and receive compensation for that work. In addition, ART is the only soft-tissue management system considered first aid instead of medical care by the Occupational Safety and Health Administration. Thus, the Laney Practice gained a

unique advantage in the marketplace by being certified in ART and connected to clients through ARTCS.  In order to take part in this business arrangement the Laney Practice voluntarily submitted to ongoing obligations with the ART Companies, including regular transmission of time sheets and patient notes to ARTCS and annual enrollment in the ART LLC recertification course.  The Laney Practice does not deny that it benefited from its decade-long relationship with the ART Companies but instead argues that there is no substantial connection to Colorado because it serviced clients in Texas.  This reasoning paints far too narrow a picture of minimum contacts analysis.  Where the defendant "has created 'continuing obligations' between himself and residents of the forum he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Burger King*, 471 U.S. at 476 (internal citation omitted).

Looking to NCS, although it never contracted with the ART Companies it allegedly committed a tort aimed at Colorado: stealing the Atmos Energy contract from ARTCS.  Under C.R.S. § 13-1-124(1)(b), a Colorado court has personal jurisdiction over an out-of-state party if that party committed a tort within the forum state.  This provision applies if either the tortious conduct or the resulting injury occurs within Colorado.  *See Vogan v. Cty. of San Diego*, 193 P.3d 336, 339 (Colo. App. 2008).  When analyzing whether the resulting injury occurs within Colorado this Court must apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), as examined by the Tenth Circuit in *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).  Under the "effects" test, a court may find that a nonresident defendant purposefully directed its activities at the forum state where there is evidence of (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the

7

injury would be felt in the forum state. *See Dudnikov*, 514 F.3d at 1072. In this case, the plaintiffs have alleged that NCS intentionally stole a client of ARTCS knowing that the brunt of the injury would be felt in Colorado. And while the alleged "theft" may have taken place in Texas, the act itself was expressly aimed at Colorado. *See id.* at 1076 (explaining that a communication made in California was expressly aimed at Colorado where the intent of the communication was to "halt a Colorado-based sale by a Colorado resident"). Therefore, jurisdiction is properly exercised over NCS pursuant to the "effects" test.

### Traditional Notions of Fair Play and Substantial Justice.

The exercise of jurisdiction over these defendants does not offend traditional notions of fair play and substantial justice. Colorado has a strong interest in adjudicating disputes in which its citizens allege injuries suffered at the hands of a foreign party. And given the amount of litigation that has already taken place just to determine venue,[3] it is in both parties' interest to obtain convenient and effective relief. Keeping this case here in Colorado so that a resolution on the merits can get underway likewise serves the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Finally, there is no unreasonable burden on the defendants to litigate this claim in Colorado.[4] (The fifth factor – the shared interest of the several states in furthering fundamental substantive social policies – is not relevant in this case.) Taking into account these considerations, the Court finds that the exercise of jurisdiction over the defendants is reasonable.

---

[3] Prior to the filing of this lawsuit, the defendants filed a declaratory judgment action against the plaintiffs in Texas state court, which was subsequently removed to federal court and dismissed by the Northern District of Texas on January 13, 2015. *See* [ECF No. 28-1; ECF No. 24 in Case No. 4:14-cv-00925-O]. The Texas case concerned the same claims at issue in this lawsuit.

[4] In fact, Judge O'Connor of the Northern District of Texas found that between Colorado and Texas, Colorado was a more convenient forum to hear this dispute. *See id.* at 6.

## ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, Subject to Same, Motion to Transfer [ECF No. 16] is DENIED.

DATED this 24th day of February, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge